UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>)<br>) |
| *Plaintiff,* | )<br>) |
| v. | ) No. 16-cr-363-JKB |
| GERALD JOHNSON, et al., | )<br>)<br>) |
| *Defendants.* | )<br>)<br>)<br>) |

**DEFENDANTS' MEMORANDUM REGARDING THE SCOPE AND STRUCTURE OF THE UPCOMING EVIDENTIARY HEARING UNDER *REMMER v. UNITED STATES***

During trial, the Court and the parties learned that one juror – Juror No. 4 – had told the others that during a recess, family members and friends of the Defendants had used cellular telephones to photograph the jurors [the "Photo Incident"]. Holding that the Photo Incident met the criteria for a hearing under *Remmer v. United States,* 347 U.S. 227 (1954), the Fourth Circuit remanded the case for such a hearing. *United States v. Johnson*, 954 F.3d 174, 180 (4th Cir. 2020). This Court has scheduled that hearing for May 10, 2021 and ordered Defendants and the government to submit briefs regarding the scope and structure of the hearing. Defendants Gerald Johnson, Kenneth Jones, and Marquise McCants respectfully submit this Joint Memorandum in response to that Order. Section I of this Memorandum addresses the substantive inquiry that must be conducted in the upcoming hearing. Section II addresses the hearing's procedural requirements.

## I. Substance of the Hearing

As the government notes, courts apply "a familiar process for analyzing allegations of extrajudicial contact." *See* Government's Memorandum Regarding Substance, Scope, and Structure of Upcoming Evidentiary Hearing Under *Remmer v. United States* ["Gov't Mem."] [ECF No. 909] at 2 (quoting *United States v. Basham*, 561 F.3d 302, 319 (4th Cir. 2009)). When a defendant presents a "credible allegation" of an external influence on the jury that is "more than [an] innocuous intervention," that influence is presumed to be prejudicial, and the trial court must "determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate." *Remmer*, 347 U.S. at 230; *Barnes v. Joyner*, 751 F.3d 229, 242 (4th Cir. 2014). In that hearing, the government bears the "heav[y]" burden of proving "that there exists no reasonable possibility that the jury's verdict was influenced by" the external influence. *Remmer,* 347 U.S. at 229-30; *Hurst v. Joyner,* 757 F.3d 389, 395 n.3 (4th Cir. 2014) (quoting *Mattox v. United States, 146 US 140, 150 (1892)*); *Barnes,* 751 F.3d at 241; *United States v. Basham,* 561 F.3d 302, 319 (4th Cir. 2009); *see also* Gov't Mem. at 2.

Here, the Fourth Circuit held that it is:

> [B]eyond dispute that a juror's report of jury members being photographed by the defendants' associates during a trial involving murdered witnesses, and that juror's act of conveying this information to other jurors, were "more than innocuous interventions," and constituted conduct "of such a character as to reasonably draw into question" the ability of the jurors to remain impartial.

954 F.3d at 180. That court ruled that "the plainly prejudicial nature of Juror #4's allegation" and this Court's "assessment that the report was credible," met the criteria

2

established in *Remmer,* triggering the presumption of prejudice and requiring this Court to conduct a *Remmer* hearing, in which the government bears the burden of overcoming the presumption of prejudice and proving "that there exists no reasonable possibility that the jury's verdict was influenced by" the Photo Incident. If there is any reasonable possibility that the Photo Incident – including Juror No. 4's report – had any effect on any juror in reaching his or her decision in this case, the Defendants' Sixth Amendment rights have been violated, and a new trial is required. *See Barnes v. Joyner,* 751 F.3d 229, 240 (4th Cir. 2014); *United States v. Lawson*, 677 F.3d 629, 648-49 (4th Cir. 2012).

The Fourth Circuit held that this "took an unduly narrow view" of the factual inquiry required by the Photo Incident:

> [B]y focusing on the question whether photographs, in fact, had been taken, and in failing to consider whether the defendants' associates had in any way intimidated the jurors by displaying their cell phones, the district court failed to consider the *effect* on the jurors of the perceived external contact. A third party's threat or perceived attempt to take a photograph of a juror may be no less intimidating to that juror than the actual taking of such a photograph. Thus, the question whether a photograph was taken was not dispositive of the prejudice inquiry, as one or more jurors may have *felt* intimidated regardless.

*Id.* at 181. The Fourth Circuit made clear that the question whether any photographs were actually taken of jurors was "only the beginning of the inquiry" required, and identified three "key substantive matters" left unresolved at trial:

1. [W]hether anyone had attempted or threatened to take photographs of the jurors;

2. the identity of the alleged actors and their relationship to the case; and

3. the impact of Juror #4's statement on other members of the jury.

3

954 F.3d at 181.

As the Government notes, Federal Rule of Evidence 606(b) – which governs testimony by a juror during an inquiry into the validity of a verdict – limits the evidence which the Court may consider in addressing these matters. It provides that a juror may testify about whether "extraneous prejudicial information was improperly brought to the jury's attention," or "an outside influence was improperly brought to bear on any juror." Fed. R. Evid. 606(b)(2)(A) & (B). However, it forbids jurors from being examined, or testifying, about "[a]ny statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment." Fed. R. Evid. 606(b)(1); *see also United States v. Paneras,* 222 F.3d 406, 411 n.1 (7th Cir. 2000) (Rule 606(b) forbids jurors from making, and a court from considering, any "comment regarding how a particular piece of material disposed the juror toward a particular verdict").

The first two of the "key substantive matters" identified by the Fourth Circuit – whether anyone attempted or threatened to photograph the jurors, and the identity of anyone who did – calls for testimony by jurors that falls within the scope of testimony permitted by Rule 606(b). Each of the jurors may, and should, be examined as to whether they observed any apparent picture-taking and, if so, the identity of any person engaged in such activity. The investigation conducted at trial, however, suggests that this inquiry is unlikely to provide significant information. At trial, only one juror – Juror No. 4 – reported that he observed anyone acting in a manner that suggested that they were taking, attempting to take, or threatening to take, jurors' photographs. Several jurors –

4

Nos. 1, 6, and 11 – indicated that although they saw people in the hall with cell phones, they did not observe any apparent photography. The remaining jurors all reported that they had observed nothing. *Id.* at 155-57.

The fact that any of the jurors may not personally have observed any apparent photography is not dispositive, however. As the Fourth Circuit held, jurors who observed no threatening activity may nevertheless feel threatened when another juror reports such activity, and this Court must:

> [C]onsider the *effect* on the jurors of the perceived external contact. A third party's threat or perceived attempt to take a photograph of a juror may be no less intimidating to that juror than the actual taking of such a photograph. Thus, the question whether a photograph was taken was not dispositive of the prejudice inquiry, as one or more jurors may have *felt* intimidated regardless.

954 F.3d at 181 (original emphasis).

As a result, the factual inquiry to be conducted here is likely to turn on the third "key substantive matter" identified by the Fourth Circuit; *i.e.,* the impact of Juror #4's statement on other members of the jury.

But while Rule 606(b) permits the jurors to testify about what they learned regarding Juror No. 4's report, the Rule flatly forbids them from being questioned, or testifying, about "the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment." Fed. R. Evid. 606(b)(1). Therefore, the jurors may not be asked, and may not testify, about whether, and how, the Photo Incident affected the process by which they arrived at a verdict in this case. Instead, as the government notes, rather than asking the jurors about their subjective reactions, the Court must apply an objective test in assessing the impact of the Photo

5

Incident and determining whether there is any reasonable possibility that it influenced any juror's decision. *See* Gov't Mem. at 6-7 (citing cases). Rather than determining and assessing the subjective reaction of each juror to the Photo Incident, the Court must assess the incident's "probable effect on a hypothetical average jury." *United States v. Schwarz,* 283 F.3d 76, 99 (2d Cir. 2002); *see also Bibbins v. Dalsheim,* 21 F.3d 13, 17 (2d Cir. 1994) ("[w]here an extraneous influence is shown, the court must apply an objective test, assessing for itself the likelihood that the influence would affect a typical juror").

In determining how an "average" juror would react to the Photo Incident, the Court must not consider the Photo Incident in a vacuum, but in the context of the trial. *See Basham,* 561 F.3d at 319 (court must "examine the entire picture, including the factual circumstances"); *see also Smith v. Phillips,* 455 U.S. 209, 222 (1982) (O'Connor, J., concurring)(*Remmer* hearing allows Court to evaluate jurors' statements "in light of the particular circumstances of the case"). As the Fourth Circuit noted, the fact that the Photo Incident occurred "during a trial involving murdered witnesses" was one of the circumstances that led to that court's conclusion that the incident was "of such a character as to reasonably draw into question" the ability of the jurors to remain impartial. 954 F.3d at 180. Considering the Photo Incident in the context of the trial makes clear that there is at least a reasonable possibility that the incident would influence an "average" juror's decision, and thereby deny Defendants their right to an impartial jury.

At trial, from its opening statement to its closing argument, the government made clear that the "heart" of its case was the allegation that Defendants "protected

6

[themselves] from ever being accountable by terrorizing those who dared to cooperate with the police." Tr. (Nov. 27, 2017) [Exh. A] at 27. The government and its witnesses told the jury that defendants had an "ironclad rule" that those who cooperated with law enforcement would be killed, and proffered "truly gruesome" evidence of murders which, the government claimed, were carried out in retaliation for such cooperation.

Faced with this evidence, the jurors on several occasions prior to the Photo Incident expressed their anxiety that they could be subject to reprisals. *First,* they expressed concern that after "passing notes" among themselves, the Defendants had "looked at" the jury. Tr. (Dec. 7, 2017) [Exh. B] at 2. *Second,* they expressed concern that during *voir dire*, the Defendants had had access to their names, and the locales in which they resided. *Id.* at 48. On these occasions, the Court refused Defendants' request that the jurors be asked whether these incidents had affected them, holding that the jurors' concerns over their own safety were "reasonable" in light of the evidence. *Id.* at 14.

The Photo Incident occurred against this backdrop and, as the Fourth Circuit recognized, this Court "immediately recognized the seriousness of Juror #4's allegations," 954 F.3d at 180, raising the concern that "there may be an effort afoot to tamper with or intimidate a juror," because "[w]hy else does somebody snap pictures of jurors going in and out of a jury room?" *Id.; see also* Tr. (Jan. 9, 2018) [Exh. C] at 136. Recognizing that there was no innocent explanation for Defendants' associates photographing – or threatening to photograph – jurors, and that this activity could be expected to influence a juror who learned of it, the Court dismissed Juror No. 4, even

7

though it appeared that no photos were actually taken, and that Juror No. 4's report was incorrect. The Court explained that:

> I am concerned that juror No. 4 may well believe that, in fact, something was going on in that regard and that that could influence his experience here and consequently his judgment with respect to the case.

*Id.* at 163.

The Court took this action without inquiring as to the subjective impact of the Photo Incident on Juror No. 4. Instead, it applied an objective test, concluding that any "reasonable juror" in Juror No. 4's position would be influenced, improperly, by the Photo Incident. This accords with the Fourth Circuit's conclusion that Juror No. 4's report was "plainly prejudicial," and that Court's holding that:

> We think it is beyond dispute that a juror's report of jury members being photographed by the defendants' associates during a trial involving murdered witnesses, and that juror's act of conveying this information to other jurors, were "more than innocuous interventions," and constituted conduct "of such a character as to reasonably draw into question" the ability of the jurors to remain impartial.

954 F.3d at 180. Therefore, applying this objective test, the Photo Incident reasonably calls into question the impartiality of any juror in the same circumstances as Juror No. 4 – *i.e.,* any juror aware of Juror No. 4's report – and the government can meet its "heav[y]" burden of proving "that there exists no reasonable possibility that the jury's verdict was influenced by" the Photo Incident, *Remmer,* 347 U.S. at 229-30; *Hurst v. Joyner,* 757 F.3d 389, 395 n.3 (4th Cir. 2014), only by proving that *no* juror other than Juror No. 4 was aware of the allegation that defendants' associates were photographing, attempting to photograph, or threatening to photograph, the jurors. *See United States v. Brande*, 329 F.3d 1173, 1178 (9th Cir. 2003) ("a jury is impartial only if its every member is impartial").

8

If the jurors' testimony in the hearing is consistent with the facts developed at trial – which indicate that all of the jurors were aware of Juror No. 4's report – the government cannot meet its burden, and Defendants are entitled to a new trial.

The government's suggestion that the Court can "thread the needle" in questioning jurors, and its suggestion that jurors may be questioned about whether they were influenced by the Photo Incident "in the moment, or at any time prior to deliberations," Gov't Mem. at 4, miss the mark, for several reasons. However well-instructed they might be, jurors cannot be expected, more than three years after trial, to draw the precise distinction postulated by the government, and to testify about the effect of the [Photo Incident on them *prior to* deliberations without touching on its effect on deliberations, or their mental processes concerning the verdict.

And even if jurors could draw that distinction, any testimony about their state of mind *before* deliberations would be relevant to the question at issue here only if it were used to infer their state of mind *during* deliberations. Such a result is barred by Rule 606(b), which explicitly places off-limits any examination of, or testimony by, jurors concerning "the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment." Fed. R. Evid. 606(b)(1).

For example, the Court could conclude that a juror who testified that the Photo Incident did not affect them before deliberations was similarly unaffected by it during deliberations only if the Court assumed that the juror's pre-deliberation state of mind continued into deliberations, and was not affected by, for example, the jury's consideration in deliberations of the "truly gruesome evidence" the government proffered

9

to prove its allegations that Defendants murdered those who cooperated with law enforcement. There is no basis for such an assumption and, more importantly, Rule 606(b) bars the Court from making it.

In sum, the government bears the "heavy" burden of proving that there is no reasonable possibility that any juror was influenced by the Photo Incident. This Court has already made an objective determination that the events Juror No. 4 reported are likely to influence jurors' judgment in this case, an assessment with which the Fourth Circuit has agreed. 954 F.3d at 180 ("[w]e think it is beyond dispute that a juror's report of jury members being photographed by the defendants' associates during a trial involving murdered witnesses, and that juror's act of conveying this information to other jurors, were 'more than innocuous interventions,' and constituted conduct 'of such a character as to reasonably draw into question' the ability of the jurors to remain impartial"). Therefore, the only factual question remaining for determination in the upcoming hearing is whether any of the remaining jurors were aware of Juror No. 4's report. If so, Defendants are entitled to a new trial.

## II. Procedural Requirements for the Hearing

The government argues that to ensure that the hearing does not "invade the sanctity of the jury's deliberations," questioning should be "tethered as closely as possible to relevant factual issues." Gov't Mem. at 7. This is obviously correct, and as discussed above, the factual inquiry to be conducted here is narrow – the only relevant factual matter in question is whether any juror was aware of Juror No. 4's report. Therefore, Defendants respectfully submit that each of the jurors should be asked whether he or she personally

observed any activity suggesting that anyone photographed, attempted to photograph, or threatened to photograph any of the jurors.[1]  If any juror's answer is affirmative, they should be further questioned as to what they observed.   Whether or not they state that they personally observed any such activity, each juror should also be asked whether they were aware of anyone else reporting such activity, and what they learned of any such report.

These questions will supply the Court with all of the relevant factual information required to make the determination necessary here.  As discussed above, the Court has already made the objective determination that there is at least a reasonable possibility that information suggesting that "something was going on in that regard . . . that could influence [a juror's] experience here and consequently his [or her] judgment with respect to the case."  Therefore, if any of the jurors indicates that he or she observed any such activity, or was aware of a report of such activity, the government cannot meet its burden, and the inquiry is concluded.

The government suggests that it may be "helpful" to examine Court Security Officer Ronald Beverly, see Gov't Mem. at 11, but this would be so only if *all* of the jurors testify – contrary to the information developed at trial – that they observed no apparent photo-taking, and were unaware of Juror No. 4's report.[2]  In those circumstances, it may also

---

[1] Defendants agree that "each and every juror" should be questioned, and that, to the extent necessary, the notes taken by the Court's former law clerk should be used to refresh the jurors' recollections.  See Gov't Mem. at 9, 12.

[2] At trial, CSO Beverly stated that he received information about Juror No. 4's report "in front of all the rest of the jurors."  Exh. C at 135.

be necessary to examine Courtroom Deputy Camille Powell and/or Mr. Jaco, who reported during trial that several jurors indicated that they were aware of Juror No. 4's report. Given the narrow factual inquiry to be made here, there is no reason to examine the Deputy United States Marshal or Marshals who investigated Juror No. 4's report during trial. *See* Gov't Mem. at 11.

*Finally,* the government suggests that because of the "delicate balance the Court must strike" in order to "not invade the sanctity of the jury's deliberations," the Court, rather than the parties, should conduct the questioning at the hearing. But although some courts have, as the government notes, found in certain circumstances that questioning in a *Remmer* hearing may be conducted by the Court rather than counsel for the parties, they have done so where the particular circumstances of the case make direct questioning by the parties problematic. *See, e.g., United States v. Calbas*, 821 F.2d 887, 896 (2d Cir. 1987) (court refused to allow counsel to question jurors over allegation that one juror provided extra-record information *during deliberations). Remmer's* requirement that jurors be examined "in a hearing with all interested parties permitted to participate," requires that the parties conduct the questioning in the absence of such circumstances. *See Smith,* 455 U.S. at 222 (O'Connor, J., concurring) (*Remmer* hearing "permits *counsel* to probe the juror's memory, his reasons for acting as he did, and his understanding of the consequences of his actions. A hearing also permits the trial judge to observe the juror's demeanor *under cross-examination* and to evaluate his answers in light of the particular circumstances of the case") (emphasis added).

The circumstances that might call for questioning by the Court rather than counsel are absent here. The narrow scope of the inquiry to be conducted obviates the government's concern over "massive examination and cross-examination" and "the risk of intruding on the privacy that the law accords a jury's deliberations." Gov't Mem. at 7-8. The Court is perfectly capable of ensuring that questioning by the parties does not stray from the very narrow scope of relevant inquiry here. Moreover, the concerns the Court identified at trial – *i.e.*, that questioning the jurors might itself "contaminat[e]" the jury, *see* Exh. C at 152 – have been eliminated by the fact that the jury has already deliberated that rendered its verdict. Defendants therefore respectfully request that counsel for the parties be permitted to conduct the examination of jurors.

## CONCLUSION

In holding that the Photo Incident met the criteria established in *Remmer v. United States,* 347 U.S. 227 (1954), the Fourth Circuit not only established the need for the upcoming hearing, but also that the Photo Incident was presumptively prejudicial to the Defendants, and that the government bears the burden of proving that "that there exists no reasonable possibility" that any juror was influenced by that incident in rendering a verdict. The jurors may not be asked, and may not testify, whether their decisions were in fact so influenced; instead, the Court must apply an objective test, and consider the effect of the Photo Incident on a "hypothetical average juror." The Court has already applied that objective test in dismissing Juror No. 4, and must apply the same objective test to any juror who states that he or she was aware of Juror No. 4's "report of jury members being photographed by the defendants' associates during a trial involving murdered witnesses." If any of the jurors was so aware – and the Court's investigation at

trial indicates that they all were – the government cannot meet its burden here, and Defendants are entitled to a new trial.

Dated: January 15, 2021

Respectfully submitted,

\_\_\_\_\_/s/_____
Paul F. Enzinna
Ellerman Enzinna PLLC
1050 30th Street, NW
Washington, DC 20007
202.753.5553
penzinna@ellermanenzinna.com

*Counsel for Defendant Gerald Johnson*


Alan R. L. Bussard
Law Office of Alan R.L. Bussard
101 East Chesapeake Avenue
Suite 200
Towson, Maryland 21286
O: (410) 821-1155
F: (410) 307-1010
alan.bussard@bussardlaw.com

*Counsel for Defendant Kenneth Jones*


Jennifer Wicks
Blind Justice Legal Services
6909 Laurel Avenue
Suite 5419
Takoma Park, MD 20913
240-469-4892 (O)
202-478-0867 (F)
jenifer@blindjustice.org

*Counsel for Defendant Marquise McCants*

## **CERTIFICATE OF SERVICE**

I certify that on January 15, 2021, copies of the foregoing Defendants' Memorandum Regarding the Scope and Structure of the Upcoming Evidentiary Hearing Under *Remmer v. United States* was filed using the CM/ECF system, which will then send notification of such filing to all counsel of record.

/s/
Paul F. Enzinna
Ellerman Enzinna PLLC
1050 30th Street, NW
Washington, DC 20007
202.753.5553
penzinna@ellermanenzinna.com

*Counsel for Plaintiff Ocean Infinity Group, Ltd.*